**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------X
UNITED STATES OF AMERICA,

     -against-

ISMAEL DELGADO,
              _Petitioner._
------------------------------X

No. 96 Cr. 126 (JFK)

**OPINION & ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/13/2018

APPEARANCES
FOR PETITIONER ISMAEL DELGADO
    Murray Richman, Esq.

FOR RESPONDENT UNITED STATES OF AMERICA
    David Zhou, Esq.

**JOHN F. KEENAN, United States District Judge:**

    Petitioner Ismael Delgado ("Petitioner" or "Delgado"), an inmate at Green Haven Correctional Facility in Stormville, NY, brings this petition for writ of error coram nobis (the "Petition") under the All Writs Act, 28 U.S.C. § 1651. For the reasons stated below, the petition is denied.

### I. Background

#### A. Petitioner's Arrests and Indictments

    On November 15, 1991, Petitioner was arrested for the murder of Gilberto Alberich in the Bronx on the basis of a positive identification by an eyewitness. (Kapp Aff. ¶ 5.) The eyewitness eventually recanted and Petitioner was released pending further investigation. (Id. ¶¶ 5-7.) After blood tests conducted by the Office of the Chief Medical Examiner were found to be inconclusive, the Bronx District Attorney's Office (the

"Bronx DA") moved to dismiss the charges against Petitioner in April 1993. (Id. ¶ 11.)  On January 21, 1997, Petitioner was charged in a multi-defendant superseding Indictment (the "federal Indictment") with three counts related to the murder of another individual, Juan Tavares:  conspiracy to commit murder (Count 50), murder in connection with a racketeering enterprise under the federal RICO statute (Count 51), and carrying a firearm and aiding and abetting the carry of a firearm in relation to the murder (Count 111). United States v. Delgado, No. 96 Cr. 126 (JFK), 2003 WL 21219850, at *1 (S.D.N.Y. May 22, 2003).  In March 1997, after new information from another eyewitness regarding Petitioner's involvement came to light, Petitioner was indicted by a state grand jury sitting in Bronx County for the murder of Gilberto Alberich. (Kapp Aff. ¶ 17.)

## B. The Plea Agreement

During plea negotiations with Petitioner's attorney Robert Blossner ("Blossner"), the Government first offered to let Petitioner plead guilty to Counts 50 and 111 in exchange for a sentence recommendation of 15 years' imprisonment and dismissal of Count 51 (the "15-Year Plea Offer"). (Delgado Aff. ¶ 6; Blossner Aff. ¶ 9.)  Petitioner "reluctantly" agreed to the 15-Year Plea Offer. (Blossner Aff. ¶ 11.)  Before the plea hearing, the Government made a second, alternative offer to Petitioner: if Petitioner would plead guilty to Counts 50, 51, and 111, the

Government would recommend a 20-year sentence of imprisonment and the Bronx DA would move to dismiss the pending state indictment (the "20-Year Plea Offer"). (Id. ¶ 12; Kapp Aff. ¶ 18.) After consultation with Blossner, Petitioner rejected the 20-Year Plea Offer. (Delgado Aff. ¶ 11.)

According to Blossner, he advised Petitioner of the new offer, which Petitioner "turned down out of hand." (Blossner Aff. ¶ 13.) Petitioner was not interested in the 20-Year Plea Offer because he "insisted that he was innocent of the murder charges in the Bronx" and "labored under the belief that because the charges in the Bronx had at one point years earlier been dismissed because a supposed witness had recanted, he would not be convicted of the [m]urder charges in the Bronx." (Id. ¶¶ 13-14.) Blossner states that he "believed that [Petitioner] understood what the new offer was, and the possible sentence he could receive if convicted of murder in the State Court," but "[u]pon reflection," Blossner faults himself for not having been "more vigorous in urging him to accept" the 20-Year Plea Offer. Id. ¶¶ 16, 22.) Petitioner states that he was "informed that if [he] pled guilty to [Count 51], [he] would receive a new sentence that would encompass my federal charges as well as a pending New York State murder indictment in Bronx County," but he rejected the 20-Year Plea Offer because he misunderstood the offer "to mean that [he] would receive an additional 20 years

for the Bronx Indictment to run consecutively with the 15 year federal sentence." (Delgado Aff. ¶¶ 7, 8, 11.)

On November 17, 1997, Petitioner pleaded guilty to Counts 50 and 111 of the federal Indictment pursuant to a plea agreement setting forth the 15-Year Plea Offer. (Kapp Aff. ¶ 20.) Petitioner testified at his plea hearing that the agreement was "explained to [him] before [he] signed it" and that he "under[stood] it adequately." (Plea Tr. at 14:8-12.) Both the Government and the Court confirmed on the record that the plea agreement did not implicate the charges in the Bronx. (Id. at 20:22-21:10.) On March 3, 1998, the Court sentenced Petitioner to a total term of 15 years' imprisonment. (Kapp Aff. ¶ 20.)

On March 23, 2000, Petitioner filed a motion under 18 U.S.C. § 2255 to vacate his federal conviction and sentence, which the Court dismissed as untimely. See Delgado, 2003 WL 21219850, at *3. The Court declined to issue a certificate of appealability on the ground that Petitioner had not made a substantial showing of the denial of a constitutional right. Id.

## C. State Court Proceedings

Petitioner appeared at a pretrial conference in New York Supreme Court, Bronx County, on September 27, 1999. (Kapp Aff. ¶ 21.) At the conference, Petitioner was given another opportunity to plead guilty to the state charges. (State Conf.

4

Tr. at 6-8.)  Thomas Kapp, the Assistant District Attorney in
the Bronx and Special Assistant United States Attorney in the
federal action, informed the court that, in exchange for a
guilty plea in the state action, the Bronx DA was offering
Petitioner 15 years' to life imprisonment to run concurrently
with the 15-year federal sentence. (Id. at 6.)  The state court
encouraged Petitioner to "[t]hink about [the offer] very
seriously before you turn it down" and noted that "if you're
found guilty of murder, in this case . . . the likely sentence
that any judge would hand you . . . would be 25 to life
consecutive, that would mean any additional 25 years above the
15." (Id. at 7.)  Petitioner responded that he understood the
risks of refusing the plea offer, but he was "certain" that he
wanted to go to trial. (Id. at 8-9.)  Following a jury trial,
Petitioner was convicted of murder in the second degree and
subsequently sentenced to a term of 25 years' to life
imprisonment to run consecutive to his federal sentence. (Kapp
Aff. ¶ 28.)  Petitioner's state conviction was affirmed on
appeal. See People v. Delgado, 292 A.D.2d 212 (1st Dep't 2002).

On September 17, 2013, more than three years after
completing his federal sentence, Petitioner moved pursuant to
New York Criminal Procedure Law Article 440.10(1)(h) to vacate
his state judgment on grounds of ineffective assistance of
counsel in connection with the 20-Year Plea Offer. (Pet. at 2.)

The state court found no merit to his ineffective assistance claim and denied the motion. People v. Delgado, No. 1845/1997, slip op. at 11 (N.Y. Sup. Ct. Dec. 6, 2013). The court noted that "it is clear from [Petitioner's] affidavits that . . . Blossner did convey the Government's alternative plea offer to [Petitioner] and gave him advice about whether to accept it." Id. at 7. The court also held that the record clearly demonstrated that no matter how forceful Blossner's advice could have been, there was "virtually no chance" that Petitioner would have accepted the 20-Year Plea Offer. (Id. at 8.) On October 3, 2014, Petitioner filed a similar motion under a different article of the Criminal Procedure Law—Article 440.20, which authorizes a state court to set aside a judgment that is invalid as a matter of law. (Pet. at 3.) The court denied the motion because Petitioner did not claim that his sentence was invalid or illegally imposed. People v. Delgado, No. 1845/1997, slip op. at 2 (N.Y. Sup. Ct. Dec. 17, 2014).

### D. Petition for Writ of Error Coram Nobis

On November 5, 2015, Petitioner filed the instant petition for writ of error coram nobis on the ground of ineffective assistance of counsel. Petitioner contends that Blossner's assistance was ineffective due to his "inadequate advice and explanation" of the 20-Year Plea Offer. As a result of Blossner's alleged ineffectiveness, Petitioner misunderstood the

offer to mean that he would receive an additional 20 years for the Bronx indictment to run consecutive to the 15-year federal sentence, and thus Petitioner rejected the offer. (Pet. at 2.) Petitioner argues that if Blossner had effectively conveyed the 20-Year Plea Offer to petitioner in an "understandable way," Petitioner wouldn't have "misapprehended" the offer and "would have accepted the 20 year sentence." (Id. at 3; Delgado Aff. ¶ 12.) Petitioner further argues that Blossner "acknowledge[s] that he believes his advice was deficient for failing to impress upon [Petitioner] the ramifications of his refusing to plead guilty to [Count 51]," which constitutes a "frank admission" of inadequate assistance. (Pet. at 3.)

## II. Discussion

### A. Applicable Law

A writ of error coram nobis must not issue unless "extraordinary circumstances are present." Foont v. United States, 93 F.3d 76, 78 (2d Cir. 1996). To obtain relief, a petitioner must show that (1) there are circumstances compelling such action to achieve justice, (2) sound reasons exist for failure to seek appropriate earlier relief, and (3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ. Id. at 79. In considering a coram nobis petition, courts presume that the proceedings were correct, and "the burden rests on the

accused to show otherwise." Id. at 78-79. Accordingly,
successful coram nobis petitions are exceedingly rare and
"generally involve[] such fundamental defects as deprivation of
counsel . . . or coerced guilty pleas." United States v. Keogh,
391 F.2d 138, 148 (2d Cir. 1968) (citation omitted).

To demonstrate ineffective assistance of counsel, the
Petitioner must satisfy the two-prong test established in
Strickland v. Washington, 466 U.S. 668 (1984). Under
Strickland, the petitioner must first demonstrate that his
counsel's assistance fell below an objective standard of
reasonableness. 466 U.S. at 687-88. Mindful of a wide range of
reasonableness, the standard is measured under prevailing
professional norms. Id. at 688. Counsel have basic duties under
Strickland, however these duties are not part of a checklist,
and the court must engage in a deferential analysis of the
totality of the circumstances. Id. The petitioner must overcome
a "strong presumption" of reasonableness. Id. at 689.

The petitioner must also show that his counsel's deficient
performance prejudiced the defense. Id. at 687. To prove
prejudice, the petitioner must show that there is a reasonable
probability that, but for his counsel's performance, the result
of the proceeding would have been different. Id. at 694.
"Reasonable probability" means "a probability sufficient to
undermine confidence in the outcome." Id.

## B. Analysis

### 1.  Unjustified Delay in Bringing the Petition

Although "the time for filing a petition is not subject to a specific statute of limitations . . . an error of constitutional dimension at the time of plea or sentence renders a conviction voidable, not void, and coram nobis relief may be bared by the passage of time." Foont, 93 F.3d at 79 (internal quotation marks omitted).  That is because entertaining a petition that was delayed without sound reason "would be an unwarranted infringement upon the government's interest in the finality of convictions." Id. at 80.  Accordingly, a petitioner must demonstrate that "sound reasons exist [] for failure to seek appropriate earlier relief." Id. at 79.  When determining whether sound reasons exist for the delay, "the critical inquiry . . . is whether the petitioner is able to show justifiable reasons for the delay." Vasquez v. United States, No. 11 CIV. 05907 LAP, 2013 WL 443965, at *3 (S.D.N.Y. Jan. 15, 2013).

Petitioner argues that he did not seek relief earlier because two Supreme Court opinions on which he relies, Lafler v. Cooper, 566 U.S. 156 (2012), and Missouri v. Frye, 566 U.S. 134 (2012), which clarified the scope of the Sixth Amendment right to effective assistance during plea bargaining, were decided on March 21, 2012. (Pet. at 4.)  However, Lafler and Frye are mere "applications of Strickland," and neither announced a "new rule

of constitutional law." <u>Gallagher v. United States</u>, 711 F.3d 315, 315–16 (2d Cir. 2013).  Thus, the timing of these decisions did not bar Petitioner from bringing a timely ineffective assistance claim based on <u>Strickland</u> in the federal action.

Petitioner also argues that he did not file an ineffective assistance claim earlier because his state appellate attorney advised him he would be better served by foregoing his Article 440 motion in state court until his release date from the federal system. (Pet. at 4.)  However, this advice, and Petitioner's apparent reliance on it, has no bearing on an ineffective assistance claim related to the federal Indictment in this Court.  Indeed, Petitioner failed to bring a timely ineffective assistance claim in this action while in federal custody, either through a direct appeal or a habeas petition. Even if the Court were to find that this advice prevented Petitioner from seeking earlier relief in this Court, Petitioner waited over five years after his release from federal custody in March 2010, (Pet. at 2), to file the instant petition.  Thus, Petitioner has not shown "sound reasons" for waiting 16 years after he was sentenced in the Bronx to bring an ineffective assistance claim in this action and his petition is denied as untimely. <u>See, e.g.</u>, <u>Vasquez</u>, 2013 WL 443965, at *3-4 (petition filed twenty-five years after conviction and nine years after petitioner received life sentence was untimely where "Petitioner

was in possession of the critical information to pursue this claim the moment he was sentenced to life imprisonment as a result of his two prior felony convictions"); Cruz v. People of New York, No. 03 CIV. 9815DC, 2004 WL 1516787, at *4 (S.D.N.Y. July 6, 2004) (petition filed over seven years after petitioner's release from state custody was untimely where "[e]very issue raised has been previously asserted in [the petitioner's] state . . . post-judgment motions, which relied on the same plea and sentence transcripts" and "previous efforts to vacate his state and federal sentences" did not sufficiently explain the delay).

However, in an abundance of caution, the Court will analyze Petitioner's ineffective assistance claim on the merits.

## 2. Ineffective Assistance of Counsel

Even if Petitioner's motion was timely, Petitioner's ineffective assistance of counsel claim is meritless.

"It is well settled that the right to effective assistance of counsel applies to certain steps before trial." Frye, 566 U.S. at 140. The "Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." Montejo v. Louisiana, 556 U.S. 778, 786 (2009) (quoting United States v. Wade, 388 U.S. 218, 227–228 (1967)). This includes the entry of a guilty plea. Frye, 566 U.S. at 140. Claims of ineffective assistance in the plea

bargain context are governed by the two-part inquiry set forth in <u>Strickland</u>. <u>Id.</u>  A petitioner must (1) show that his counsel's representation "fell below an objective standard of reasonableness" under "prevailing professional norms," and (2) "affirmatively prove prejudice," that is, show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 688, 693-94.

Petitioner argues that had Blossner "effectively conveyed" the 20-Year Plea Offer, Petitioner wouldn't have misapprehended it to mean that he would receive an additional 20 years for the Bronx indictment to run consecutive to the 15-year sentence he had already agreed to accept. (Pet. at 3.)  Petitioner also contends that Blossner admits that his assistance was inadequate because he "acknowledge[s] that he believes his advice was deficient for failing to impress upon [Petitioner] the ramifications of his refusing to plead guilty to [Count 51]." (<u>Id.</u>)  Accordingly, Petitioner argues that he is entitled to an evidentiary hearing to "develop[] the relevant facts." (<u>Id.</u>)

Petitioner has not satisfied either prong of the <u>Strickland</u> inquiry.  First, he has not shown that Blossner's counsel was ineffective.  Petitioner argues in the petition that Blossner failed to adequately explain the 20-Year Plea Offer.  However, in his affidavit, the most Petitioner states regarding the defectiveness of Blossner's communication of the 20-Year Offer

12

is that "[h]ad my attorney clearly conveyed the folly and risks of rejecting the government's plea offer . . . I would have accepted the [20-Year Plea Offer]." (Delgado Aff. ¶ 14.) An attorney is required to do no more than "inform a competent client of the law in a language and manner he can understand . . . there is no duty for an attorney to insure that his client understands all that he is told." <u>Martinez v. Capra</u>, No. 13CV3657RARLE, 2016 WL 127587, at *4 (S.D.N.Y. Jan. 11, 2016) (internal quotation marks omitted).

Moreover, even crediting the contents of Petitioner's affidavit, Petitioner does not contend that Blossner failed to communicate the 20-Year Plea Offer or gave him erroneous advice regarding the offer. Indeed, Petitioner states that he <u>was</u> "informed that if I pled guilty to [Count 51], I would receive a new sentence that would encompass my federal charges as well as . . . [the] murder indictment in Bronx County." (Delgado Aff. ¶ 7.) This account is consistent with Blossner's, who states that he advised Petitioner of the new offer, which Petitioner turned down because he "insisted that he was innocent of the murder charges in the Bronx" and believed that because those charges had been dismissed years earlier, he would not be convicted. (Blossner Aff. ¶¶ 13-14.) Blossner states that he "believed that [Petitioner] understood [the 20-Year Plea Offer], and the possible sentence he could receive if convicted of murder in the

13

State Court," but states that he regrets failing to "impress upon [Petitioner] the ramifications of his refusing" the 20-Year Plea Offer, that he "should have stressed" that the sentence arising from a conviction in state court would run consecutive to the federal sentence, and that he "should have used [his] knowledge and experience . . . to convince [Petitioner]" to agree to the 20-Year Plea Offer. (Id. ¶¶ 16-17.)

Failure to persuade a defendant to accept a guilty plea does not qualify as deficient representation. See, e.g., Beras v. United States, No. 05 Civ. 2678 (SAS), 2013 WL 1155415, at *17 (S.D.N.Y. Mar. 20, 2012), appeal docketed, No. 17-3558 (2d Cir. Nov. 2, 2017) ("[C]ounsel's failure to persuade [the defendant] to plead guilty cannot, without more, constitute unreasonable performance under Strickland . . . [t]he fact that [the petitioner] now regrets the choice he made does not mean that his counsel acted unreasonably."). The cases Petitioner cites in support of his petition do not support his argument that Blossner's assistance was ineffective. In Lafler, the parties agreed that counsel's performance was deficient because he erroneously advised the petitioner to reject a plea offer on the grounds he could not be convicted at trial, and in Frye, the petitioner's trial counsel "did not make a meaningful attempt to inform the defendant of a written plea offer before the offer expired." See Lafler, 566 U.S. at 163; Frye, 566 U.S. at 149;

see also Fulton v. Graham, 802 F.3d 257, 266 (2d Cir. 2015)
(petitioner's sworn statements that he rejected a plea offer
because his counsel offered "no guidance" during plea
negotiations and "failed to discuss" the plea offer indicated he
"may be entitled to further relief"); Millington v. Lee, No. 11
CIV. 499 LGS DCF, 2015 WL 1402133, at *19 (S.D.N.Y. Mar. 26,
2015) (Petitioner received ineffective assistance where his
counsel incorrectly informed him that the maximum sentence he
could face, if convicted, would be 25 years to life, as opposed
to life without parole).  On the contrary, here, the statements
of both Petitioner and Blossner show that Blossner communicated
the 20-Year Plea Offer to Petitioner and advised him about the
offer, even if that advice was not "vigorous" enough to persuade
Petitioner to accept it. (Blossner Aff. ¶¶ 13, 16-17, 22;
Delgado Aff. ¶¶ 7-8, 14.)  This representation does not "f[a]ll
below an objective standard of reasonableness."

    Even if Petitioner could show that Blossner's
representation was ineffective, Petitioner has not shown
prejudice.  Although Petitioner now states that he "would have
accepted the 20 year sentence without a moment's hesitation if
[he] had understood the offer," (Delgado Aff. ¶ 12), this
statement is belied by the record.  First, Blossner states that
Petitioner rejected the 20-Year Plea Offer "out of hand" because
he "insisted that he was innocent" of the Alberich murder and

believed that because the charges in the Bronx had at one point been dismissed years earlier, he would not be convicted. (Blossner Aff. ¶¶ 13-14.) This account is confirmed by Petitioner's colloquy in the Bronx action. After Petitioner was sentenced in the federal action, he refused a plea offer from the Bronx DA of 15 years' to life that would run concurrently with the federal sentence. At a pretrial conference on September 27, 1999, the state court instructed Petitioner to "think about [the offer] very seriously" because the offer "may very well result in absolutely no additional time of incarceration . . . or it may result in a few years in addition," whereas the "likely sentence" following a guilty verdict at trial "would be 25 to life consecutive, that would mean an additional 25 years above the 15." (State Conf. Tr. at 6:7-8:19.) Petitioner responded that he understood, but stated that he was "certain" that he "want[ed] to go to trial." (Id. at 8:22-9:24.) Petitioner claims that he did not accept the offer from the Bronx DA because it carried the possibility of a life sentence. Delgado, No. 1845/1997, slip op. at 10. However, as the state court noted in deciding Petitioner's motion under Article 440.10, Petitioner's rejection of the offer from the Bronx DA "further demonstrates that . . . he would have rejected [the 20-Year Plea Offer] had he properly understood its terms." Id. Accordingly, Petitioner has not demonstrated that "but for

counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

### Conclusion

For the reasons described above, the Court concludes that Petitioner has failed to demonstrate the existence of sound reasons for the delay in filing the present petition. The Court further concludes that Petitioner has failed to demonstrate that he received ineffective assistance of counsel with respect to his rejection of the 20-Year Plea Offer. Accordingly, the petition for a writ of error coram nobis is DENIED.

The Court declines to issue a certificate of appealability because Petitioner has not made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Krantz v. United States, 224 F.3d 125, 127 (2d Cir. 2000). Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is respectfully directed to terminate the motion docketed at ECF No. 770.

**SO ORDERED.**

Dated:   New York, New York
        February 13, 2018

                                 John F. Keenan
                                 United States District Judge